## PICKERING *v.* COLEMAN & A.

Persons and property annexed to a school district in an adjoining town are subject to school-house taxes in the district to which they are annexed, and not elsewhere, although, previous to such annexation, the town, within whose limits they were, constituted one school district; and if the town or city containing the district to which they are annexed be subsequently consolidated into one district, they will be subject to school-house taxes therein, and not elsewhere.

A farm situated in an adjoining town having been annexed to a school district in Portsmouth for school purposes, a subsequent act, providing that Portsmouth shall constitute one school district, was construed as meaning that Portsmouth (as now existing for school purposes) shall constitute one school district.

CASE, by Richard Pickering against Valentine M. Coleman and others, to recover a tax assessed by them upon the plaintiff. For the purposes of this case, it was agreed that in 1872 the defendants, being selectmen of Newington, which contains but one school district, in pursuance of a vote of the district, assessed upon the farm and property of the plaintiff a tax of $53.56 for the erection of a new school-house in Newington, and committed the tax to the .collector, who compelled the plaintiff to pay it; and that this tax was lawfully assessed, if such a tax could be lawfully assessed in Newington, in view of the statute of June 22, 1842, ch. 671, which enacts,—"That Richard Pickering, of Newington, in the county of Rockingham, and the farm on which he now lives in said Newington, and all such persons as shall hereafter live on said farm, be and they are hereby annexed to school district numbered one in the town of Portsmouth, for the purpose of schooling, and for that purpose shall be subject to all the liabilities and entitled to all the privileges in said district, as fully as though they were located in said town of Portsmouth. And the selectmen of Newington shall annually, as soon as may be in each year, cause to be collected and paid over to said district numbered one, or the agent thereof, the just and fair proportion of all school money belonging to said town of Newington, according to the ratio of proportion which the inventory of the said Richard Pickering, and those living on his farm, bears to the whole inventory of said town of Newington."

The defendants offered to prove that since the passage of this act the selectmen of Newington have annually assessed and collected the usual school tax upon the plaintiff and his farm, and have paid the same over to the town or city of Portsmouth; and that no. tax has been assessed by Portsmouth upon the plaintiff or his farm. The case was decided at the August adjourned term, 1873.

*Goodall & Marston*, for the plaintiff.

*Hatch*, for the defendants.

HIBBARD, J. I. The decision of this case appears at the first view to be complicated by two difficulties: first, Newington has not, since the act annexing the plaintiff and his farm to a school district in Portsmouth was passed, been divided like ordinary towns into school districts; and, secondly, school districts in Portsmouth have not, since the passage of said act, been authorized, like ordinary school districts, to raise money for building and repairing school-houses.

In determining the question which is presented for our decision, it may aid us to inquire, in the first place, whether, if Newington had been divided into school districts, and school districts in Portsmouth had been authorized to raise money for building and repairing school-houses, a school-house tax could have been lawfully assessed against the plaintiff in Newington. As a means of determining this question, it will be convenient to ascertain whether, upon that state of facts, such a tax could have been lawfully assessed against him in school district No. 1 in Portsmouth.

Before there was any general statute in this state, authorizing the annexation of a part of a school district in one town to a district in another town, acts of the legislature similar to this were occasionally passed. We are not called upon to ascertain the precise force of the words " for the purpose of schooling " contained in these acts, nor whether, previous to the legislation of 1845, the persons and property thus annexed became liable to taxation in the districts to which they were annexed.

The act of 1845, ch. 223, sec. 1, provided that " all persons, who have been or may hereafter be severed from any school district in one town and annexed to a school district in any other town for the purpose of schooling, shall pay a just proportion for the purchase, building, or repairing [of] school-houses in said districts to which they are or may be annexed; " and sec. 2 provided that " whenever any such district shall vote to raise money, the clerk of said district shall certify such vote to the selectmen of each of said towns; and said selectmen shall form a joint board for the purpose of assessing upon the polls and ratable estate in said district the due proportion of said money."

The act of 1850, ch. 974, though mainly relating to the literary and school funds belonging to those severed from a school district in one town and annexed to a district in another town for the purpose of schooling, provided, in sec. 1, that " whenever the real estate of any person shall be disannexed for the purposes aforesaid, the polls and ratable estate of all persons residing or having their home on said real estate, on the first day of April of each year, shall also be considered as disannexed."

These two acts remained in force until the enactment of the Gen-

eral Statutes. In accordance with their plain provisions, if Newington had been divided into school districts, and school districts in Portsmouth had been authorized to raise money for building and repairing school-houses, a school-house tax ·could have been lawfully assessed against the plaintiff in school district No. 1, in Portsmouth, until these acts were repealed by the enactment of the General Statutes. As it could not have been the intention of the legislature that the plaintiff should be thus taxable in two districts at the same time, it must be equally plain that, upon that state of facts, such a tax could not have been lawfully assessed againt him in Newington, previous to the time of the General Statutes.

We now proceed to inquire whether the law on this subject was changed by the General Statutes. By ch. 78, sec. 3, it is provided that " all existing districts, however organized, shall continue to be such, subject to be altered or discontinued according to existing laws." By ch. 80, sec. 10, it is provided that " in the assessment of school-house taxes, every person shall be taxed in the district in which he lives, for his poll and the personal estate which he has subject to taxation in town ; and all real estate shall be taxed in the district in which it is." It must be obvious that one who owns and occupies a farm which constitutes a part of a school district in a town in which he does not reside, lives in that district, and that his farm is in it, and it cannot in any just sense be said that he lives in or that his farm is in any district in the town in which he resides ; and we are of the opinion that those who, with their real estate, constituted a part of a school district in an adjoining town, and were subject to school-house taxes therein, at the time the General Statutes took effect, continued to constitute a · part of the district, and to be taxable therein, afterwards in the same manner as before.

Ample provision is made for the assessment and collection of such a tax in the following sections of ch. 78 of the General Statutes :

" SEC. 7. Every district including land in different towns, shall be deemed a district of that town in which most of the voters therein reside at its formation ; but the district may, by vote recorded in both towns, elect to which town they will belong.

"SEC. 8. The selectmen, school committee, and collector of the town to which such district may be deemed to belong, shall have the same powers in respect to such district as if the whole were in that town."

It remains to be considered whether,—because Newington has not been divided into school districts, and school districts in Portsmouth have not been authorized to raise money for building and repairing school-houses,—we are required to hold that the plaintiff, though not entitled to the privileges of school-houses in Newington, is liable to contribute towards their erection and repair; or, though entitled to the privileges of school-houses in Portsmouth, is exempted from liability to contribute towards their erection and repair.

Under the act of 1840, ch. 495, Newington was exempted from the operation of the statute requiring towns to be divided into school dis-

tricts.   This act was repealed by the enactment of the Revised Statutes, but at the same time reënacted in ch. 69, sec. 3, and remained in force until the enactment of the General Statutes, when all towns were relieved by ch. 78, sec. 2, from the duty of being divided into school districts, it being provided that any town not so divided "shall be a district."   But we are unable to perceive how the fact that there is but one school district in Newington can give to that district any superior right to assess school-house taxes against those not residing in the district.   Newington, with the exception of the plaintiff's farm, constitutes one district; but how does this entitle the Newington district to tax the plaintiff, unless one or the other district could if there were two districts in the town?   The plaintiff does not, by reason of this circumstance, any less live in a school district in Portsmouth, neither is his farm any less in it.   He does not by reason of this any more live in a school district in Newington, neither is his farm any more in it.

By the act of 1826, Laws, ed. of 1830, p. 437, sec. 1, all money for building or repairing school-houses in Portsmouth was required to be raised in town-meeting, and to be assessed by the selectmen upon the whole town.   This act was in force when the act, annexing the plaintiff and his farm to a district in Portsmouth, was passed.   It was repealed by the enactment of the Revised Statutes; but this provision was at the same time reënacted in ch. 74, sec. 12, and remained in force until the establishment of the city of Portsmouth by the act of 1849, ch. 836, when, by sec. 15, all the powers previously vested in the town as a municipal corporation became vested in the city council, and, by sec. 13, all the powers previously vested in the selectmen were vested in the mayor and aldermen.   But how can this affect the liability of the plaintiff to be taxed for building and repairing school-houses in Portsmouth?   We see no force in the argument that it would be unjust to require the plaintiff to pay a tax towards building and repairing all the school-houses in Portsmouth.   This would no more be unjust to him than to the inhabitants of district No. 1, who reside within the limits of Portsmouth.   He, equally with them, is entitled to the use of a school-house which the whole town or city erected and keeps in repair.   But it is objected that, if the plaintiff is held liable to be assessed for his proportion of such sum as the city council of Portsmouth, in whose election he has no voice, may vote to raise for building and repairing school-houses, which is assessed and expended under the direction of the mayor and aldermen, in whose election also he has no voice, it will be a case of taxation without representation.   It is unnecessary to decide whether the plaintiff has not an exclusive right to raise such an objection, because we think, even if it were raised by him, it would be for the legislature and not for the court to consider.   The legislature possesses the same authority to require the plaintiff to pay such a tax, as to impose a tax on aliens, or on the property of women, who are equally subjected to taxation without representation.   So far as this objection relates to the method of assessing and collecting school-house taxes in Portsmouth, it applies with equal force to all school districts

composed of territory situated in two or more towns, under the provisions of the General Statutes, ch. 78, secs. 7, 8, before cited, and clearly is without foundation.

We are, therefore, of the opinion that the circumstance that Newington has not been divided into school districts, and that school districts in Portsmouth have not been authorized to raise money for building and repairing school-houses, since the plaintiff was annexed to a district therein, does not relieve him from taxation for school-house purposes " in the district in which he lives," nor his farm from similar taxation " in the district in which it is."

That the selectmen of Newington were required, by the act annexing the plaintiff and his farm to a school district in Portsmouth, to collect and pay to said district the plaintiff's share of school money annually, and have done so, cannot affect his liability to the tax in controversy. It was customary to insert a similar provision in such acts, previous to the enactment of a general law on the subject of annexing real estate and its inhabitants to a district in an adjoining town " for the purpose of schooling." The same provision is contained in the act of 1850, ch. 974, and in the General Statutes, ch. 78, sec. 13. The term " school money," as thus used, clearly does not relate to money raised for building or repairing school-houses. Nor can the fact, that for a period of thirty years no school-house tax has been assessed in Portsmouth upon the plaintiff or his farm, give any validity to a tax in Newington which would otherwise be void.

II. But it is contended that the act annexing the plaintiff and his farm to a school district in Portsmouth was repealed by the act of 1866, ch. 4313, which provides, in sec. 1, that " the city of Portsmouth shall constitute one school district," and in sec. 14, that " all acts and parts of acts inconsistent herewith are hereby repealed." Upon a literal interpretation, this would be the true construction, and it is doubtful whether such may not have been the intention of the legislature; but our conclusion is, that it is more reasonable to construe section 1 as meaning that "the city of Portsmouth [as now existing for school purposes] shall constitute one school district." We are therefore of the opinion that the plaintiff and his farm have, since the passage of the act of 1866, belonged to the Portsmouth district, and not to the Newington district.            *Case discharged.*